| | |
|---|---|
| InVue Security Products Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No.: |
| Mobile Tech, Inc. d/b/a Mobile Technologies Inc. ) | |
| and MTI, formerly known as Merchandising ) | |
| Technologies Inc., ) | COMPLAINT |
| ) | Jury Trial Demanded |
| Defendants. ) | |
| ) | |

## COMPLAINT

Plaintiff InVue Security Products, Inc. ("Plaintiff" or "InVue") files this Original Complaint for patent infringement against Defendant Mobile Tech, Inc. ("Defendant" or "MTI") and alleges as follows:

### The Parties

1. InVue is a corporation formed under the laws of Ohio with a principal place of business at 15015 Lancaster Hwy, Charlotte, NC 28277.

2. Upon information and belief, MTI is a corporation formed under the laws of Indiana with a principal place of business at 1050 NW 229th Avenue, Hillsboro, Oregon 97124.

### Jurisdiction

3. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this arises under the United States Patent Act, 35 U.S.C. § 100, *et seq*.

4. Upon information and belief, pursuant to the U.S. Constitution and N.C. Gen. Stat. Ann. 1-75.4, this Court has personal jurisdiction over MTI because it has transacted business within the State of North Carolina, has contracted to supply goods in the State of North Carolina, has engaged in infringing acts in the State of North Carolina, and has engaged in acts outside of the State of North Carolina causing injury or damage within the State of North Carolina, including in the Western District of North Carolina.

5. Venue is proper in the Court pursuant to 28 U.S.C. §§ 1391(b) and 1400 because InVue has its principal place of business in this district, MTI has committed acts of infringement in this district, and MTI is subject to personal jurisdiction here.

## Patents-in-Suit

6. On September 15, 2015, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,135,800 (the '800 patent), entitled "Programmable Security System and Method for Protecting Merchandise," a true and accurate copy of which is attached as Exhibit A.

7. On November 11, 2014, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,884,762 (the '762 patent), entitled "Programmable Security System and Method for Protecting Merchandise," a true and accurate copy of which is attached as Exhibit B.

8. InVue is the owner of the '800 patent and the '762 patent.

9. InVue has not authorized MTI or its customers to manufacture, offer to sell, sell, use, or import any product or method covered by the '800 patent or the '762 patent.

10. InVue has complied with the marking requirements of 35 U.S.C. § 287 for the '800 patent and the '762 patent.

2

## Defendant's Infringing Activities

11. Upon information and belief, MTI manufactures, offers for sale, sells, imports, and uses security products in the U.S., including without limitation, security products MTI refers to as the "Freedom Micro", "Freedom Micro DI", "Intellikey Gen 2", and "Gen2 Intellikey Starter Kit" including "Intellikey Gen 2" and "Multiple Code Processor" (hereinafter "Accused Products").

12. MTI's customers use the Accused Products in the U.S. including, for example, use by one or more retailers in the state of North Carolina.

13. The Accused Products and use of the Accused Products embody the inventions patented in the '800 patent and the '762 patent.

14. The Accused Products are not staple articles of commerce.

15. The Accused Products are not suitable for substantial non-infringing use.

16. The Accused Products are especially made or especially adapted for use in an infringement of the '800 patent and the '762 patent. The Accused Products include security devices that are configured only for purposes of attachment to merchandise to protect the merchandise from theft.

17. On information and belief, MTI knows that the Accused Products are not staple articles of commerce, are not suitable for substantial non-infringing use, and are especially made or adapted for use in a manner that infringes InVue's patent rights.

18. MTI has had constructive knowledge of the '800 patent and the '762 patent at least through InVue's compliance with the marking requirements of 35 U.S.C. § 287 for the '800 patent and the '762 patent.

19. MTI has had actual knowledge of the '800 patent and the '762 patent since at least the date on which MTI received service of the Summons and Complaint in this action.

3

## First Cause of Action: Direct Infringement of U.S. Patent No. 9,135,800

20. InVue incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

21. MTI's manufacture, offer for sale, sale, importation, and use of the Accused Products in the U.S. directly infringes the '800 patent, either literally or under the doctrine of equivalents.

22. MTI's manufacture, offer for sale, sale, and importation of the Accused Products infringes, for example, at least claim 1 of the '800 patent.

23. The Accused Products include security systems that each provide at least the following, or the equivalents thereof: a programming station that randomly generates a single security code unique to the programming station and stores the single security code in a memory of the programming station, a programmable key that communicates with the programming station to receive the single security code and store it in a memory, a security device that has a memory for storing the single security code, attaches to the merchandise, and has an alarm that is activated when the integrity of the security device is compromised, and an arming or disarming of the security device with the programmable key upon a matching of the single security code stored in the memory of the security device with the single security code stored by the programmable key.

24. MTI's direct infringement of the '800 patent has caused financial damages to InVue, including for example, lost sales revenue caused by MTI's sales of the Accused Products.

25. MTI's direct infringement of the '800 patent has irreparably damaged InVue, including for example, avoiding InVue's right to exclude others from making, using, selling, or offering to sell products embodying the invention patented in the '800 patent.

26. MTI's direct infringement of the '800 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of this Court.

27. MTI lacks a reasonable belief that making, using, selling, or offering to sell the Accused Products in the U.S. does not directly infringe the '800 patent.

28. MTI's knowledge of the '800 patent and lack of reasonable belief that making, using, selling, or offering to sell the Accused Products in the U.S. does not directly infringe the '800 patent constitutes willful infringement of the '800 patent.

**Second Cause of Action: Indirect Infringement of U.S. Patent No. 9,135,800**

29. InVue incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

30. MTI sells the Accused Products to its customers with the intent that its customers will use and operate the Accused Products in the U.S. in a manner that infringes the '800 patent.

31. Upon information and belief, MTI provides its customers with instructions regarding the infringing use and operation of the Accused Products in the U.S.

32. Upon information and belief, MTI trains its customers in the infringing use and operation of the Accused Products in the U.S.

33. Upon information and belief, MTI has observed its customers using and operating the Accused Products in the U.S. in an infringing manner.

34. Upon information and belief, MTI was aware that use of the Accused Products in the U.S. would directly infringe the '800 patent.

35. MTI's actions to aid and abet its customers to directly infringe the '800 patent with knowledge that use of the Accused Products in the U.S. would directly infringe the '800 patent constitutes indirect infringement.

5

36. MTI's indirect infringement of the '800 patent has caused financial damages to InVue, including for example, lost sales revenue caused by MTI's sales of the Accused Products.

37. MTI's indirect infringement of the '800 patent has irreparably damaged InVue, including for example, avoiding InVue's right to exclude others from making, using, selling, or offering to sell products embodying the invention patented in the '800 patent.

38. MTI's indirect infringement of the '800 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of this Court.

39. MTI lacks a reasonable belief that making, using, selling, or offering to sell the Accused Products in the U.S. does not directly infringe the '800 patent.

40. MTI's knowledge of the '800 patent and lack of reasonable belief that making, using, selling, or offering to sell the Accused Products in the U.S. does not directly infringe the '800 patent constitutes willful infringement of the '800 patent.

**Third Cause of Action: Direct Infringement of U.S. Patent No. 8,884,762**

41. InVue incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

42. MTI's manufacture, offer for sale, sale, importation, and use of the Accused Products in the U.S. directly infringes the '762 patent, either literally or under the doctrine of equivalents.

43. MTI's manufacture, offer for sale, sale, importation, and use of the Accused Products infringes, for example, at least claim 1 of the '762 patent.

44. The Accused Products include security systems that each provide at least the following, or the equivalents thereof: a programming station that generates a security code and stores the code in a memory of the programming station, a programmable key that communicates with the programming station to receive the security code and store it in a memory, a security

6

device that has a memory for storing the security code, attaches to the merchandise, and has an alarm that is activated when a switch is actuated in response to the integrity of the security device being compromised, and a communication between the programmable key and the security device for arming or disarming the security device upon a matching of the security code stored in the memory of the security device with the security code stored in the memory of programmable key.

45. MTI's direct infringement of the '762 patent has caused financial damages to InVue, including for example, lost sales revenue caused by MTI's sales of the Accused Products.

46. MTI's direct infringement of the '762 patent has irreparably damaged InVue, including for example, avoiding InVue's right to exclude others from making, using, selling, or offering to sell products embodying the invention patented in the '762 patent.

47. MTI's direct infringement of the '762 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of this Court.

48. MTI lacks a reasonable belief that making, using, selling, or offering to sell the Accused Products in the U.S. does not directly infringe the '762 patent.

49. MTI's knowledge of the '762 patent and lack of reasonable belief that making, using, selling, or offering to sell the Accused Products in the U.S. does not directly infringe the '762 patent constitutes willful infringement of the '762 patent.

**Fourth Cause of Action: Indirect Infringement of U.S. Patent No. 8,884,762**

50. InVue incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

51. MTI sells the Accused Products to its customers with the intent that its customers will use and operate the Accused Products in the U.S. in a manner that infringes the '762 patent.

52. Upon information and belief, MTI provides its customers with instructions regarding the infringing use and operation of the Accused Products in the U.S.

53. Upon information and belief, MTI trains its customers in the infringing use and operation of the Accused Products in the U.S.

54. Upon information and belief, MTI has observed its customers using and operating the Accused Products in the U.S. in an infringing manner.

55. Upon information and belief, MTI was aware that use of the Accused Products in the U.S. would directly infringe the '762 patent.

56. MTI's actions to aid and abet its customers to directly infringe the '762 patent with knowledge that use of the Accused Products in the U.S. would directly infringe the '762 patent constitutes indirect infringement.

57. MTI's indirect infringement of the '762 patent has caused financial damages to InVue, including for example, lost sales revenue caused by MTI's sales of the Accused Products.

58. MTI's indirect infringement of the '762 patent has irreparably damaged InVue, including for example, avoiding InVue's right to exclude others from making, using, selling, or offering to sell products embodying the invention patented in the '762 patent.

59. MTI's indirect infringement of the '762 patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of this Court.

60. MTI lacks a reasonable belief that making, using, selling, or offering to sell the Accused Products in the U.S. does not directly infringe the '762 patent.

61. MTI's knowledge of the '762 patent and lack of reasonable belief that making, using, selling, or offering to sell the Accused Products in the U.S. does not directly infringe the '762 patent constitutes willful infringement of the '762 patent.

## Request for Relief

Wherefore, InVue respectfully requests the entry of judgment against Defendant MTI and its subsidiaries, successors, parents, affiliates, officers, directors, agents, servants, employees, and all persons in active concert or participation, providing the following relief:

A. Finding that Defendant MTI has directly and/or indirectly infringed the '800 Patent and/or the '762 patent and finding that such infringement has been willful;

B. Entering a permanent injunction, under 35 U.S.C. § 283 and the equitable powers of the Court, against Defendant MTI and all those in active concert or participation with Defendant MTI, to prevent further direct and/or indirect infringement of the '800 patent and the '762 patent;

C. Awarding Plaintiff InVue damages in an amount that will be proved at trial and that will adequately compensate Plaintiff InVue for the infringement but in no amount less than a reasonable royalty as authorized by 35 U.S.C. § 284;

D. Increasing the damages awarded to Plaintiff InVue up to three times the amount of Plaintiff's actual damages as authorized by 35 U.S.C. § 284;

E. Finding that this is an exceptional case and award Plaintiff InVue its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285 and/or other applicable laws;

F. Awarding Plaintiff InVue prejudgment interest and costs under 35 U.S.C. § 284 and/or other applicable laws;

G. Granting such other legal and equitable relief and the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable to a jury.

This the 15th day of December, 2015.    Respectfully submitted,

s/ J. Mark Wilson

J. Mark Wilson
N.C. Bar Number 25763
MOORE & VAN ALLEN, PLLC
100 North Tryon Street
Suite 4700
Charlotte, NC  28202-4003
Telephone: (704) 331-1000
Facsimile: (704) 331-1159
Email: markwilson@mvalaw.com

Tim F. Williams (Fed. Id. 6276)
Steven R. LeBlanc (Fed. Id. 7000)
DORITY & MANNING, P.A.
P.O. Box 1449
Greenville, S.C. 29602-1449
Tel: 864-271-1592
Fax: 864-233-7342
timw@dority-manning.com

**Attorneys for the Plaintiff**