**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| InVue Security Products, Inc., | |
|     Plaintiff, | No.: 3-15-CV-00610-MOC-DSC |
|     v. | |
| Mobile Tech, Inc. d/b/a Mobile Technologies, Inc. and MTI, formerly known as Merchandising Technologies, Inc., | |
|     Defendant. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT MOBILE TECH, INC.'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff InVue Security Products, Inc. ("Plaintiff" or "InVue") submits this Memorandum of Law in Opposition to Defendant Mobile Tech, Inc.'s ("Defendant" or "MTI") Motion to Dismiss Plaintiff's First Amended Complaint [Docket Entry # 25] and associated Memorandum in Support ["Def. Mem.", Docket Entry # 26]. For the reasons more fully stated herein, InVue respectfully requests that the Court deny Defendant's Motion to Dismiss, find that the patents-in-suit are directed to patent-eligible subject matter, and permit all claims in the First Amended Complaint to proceed and be adjudicated upon the merits.

**I.     INTRODUCTION**

This is the second Rule 12(b)(6) Motion to Dismiss filed in this case by Defendant. In the first motion, Defendant claimed that Plaintiff had to plead its infringement claims in much more detail than required by the Federal Rules. Plaintiff disagreed, but filed an Amended Complaint (with more allegations, but much less detail than Defendant claimed was required) in the hopes of avoiding further motion practice in the Court. Now, in its second Rule 12(b)(6) Motion to Dismiss,

Defendant abandons its earlier grounds for dismissal, opting this time to assert a brand new theory of dismissal – that Plaintiff's First Amended Complaint should be dismissed because all 113 claims of all three of the patents-in-suit are directed to patent-ineligible subject matter. Defendant argues, at this preliminary stage, that the Court should rule on the merits of Defendant's § 101 invalidity affirmative defense and hold, contrary to decisions from courts around the country, that the concrete, physical, and tangible security systems that are the subject of the patents-in-suit are somehow abstract concepts that are not patent eligible.

The Supreme Court of the United States has warned courts to "tread carefully" in applying § 101. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The Supreme Court has also made clear that "an invention is not rendered ineligible for a patent simply because it involves an abstract concept" because "[a]t some level, all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id*. If Defendant's Motion were to succeed in this case, the law of patent-eligible subject matter under § 101 and the Supreme Court's *Alice* decision would be turned upside down.

Defendant raises its "abstract idea" argument against the patents-in-suit by unilaterally mischaracterizing the scope and content of the patents-in-suit; failing to properly address the numerous claim limitations found among the 113 claims of the patents-in-suit; improperly ignoring concrete, physical, and tangible elements found in the actual claims of the patents-in-suit; denying that claim construction is required for its § 101 challenge while simultaneously advocating skewed and incorrect claim constructions; and asking this Court to rule on invalidity under § 101 at the pleadings stage by relying on disputed materials that go beyond the First Amended Complaint and

without the benefit of discovery.[1]  Simply put, Defendant has overreached in its arguments for early dismissal by trying to apply the recent *Alice* decision here when it clearly does not apply.  As discussed herein, Defendant has not and cannot not meet its high burden of proof to establish patent ineligibility under § 101 through a Rule 12(b)(6) motion.  As such, Plaintiff respectfully submits that Defendant's Motion must be denied.

## II.    THE PATENTS-IN-SUIT

This is a patent infringement action asserting Defendant's infringement of U.S. Patent Nos. 9,269,247 (the '247 Patent); 9,135,800 (the '800 Patent); and 8,884,762 (the '762 Patent) (collectively "the patents-in-suit").  The patents-in-suit describe and claim, *inter alia*, security systems and methods for protecting items of merchandise. *See, e.g.*, Exhibit C to First Amended Complaint, '762 patent at Col. 1, lines 47-67.  Each of the patents-in-suit is entitled "Programmable Security System and Method for Protecting Merchandise." First Amended Complaint at ¶ 1.

Before the inventions of the patents-in-suit, one of several problems with merchandise security systems was the ease with which keys for such systems could be stolen and used in an unauthorized manner. *See, e.g.*, Exhibit C to First Amended Complaint, '762 at Col. 1, lines 47-67. Such conventional security devices could be attached to merchandise and had e.g., a mechanical key that could be used to arm and disarm an alarm to allow authorized removal of the merchandise for purchase. *Id*.  Unfortunately, the key could be easily stolen and then used by the shoplifter to steal merchandise at the same store - or another store using the same system controlled by the key. *Id*.

---

[1] While challenges to patent eligibility have become a popular strategy of infringement defendants in the wake of *Alice*, the Fourth Circuit has long followed procedural requirements that expose the shortcomings of Defendant's Rule 12(b)(6) Motion to Dismiss.  As more fully discussed below, Defendant's argument of patent ineligibility is based predominantly upon matters outside of Plaintiff's First Amended Complaint.  Such an approach to a Rule 12(b)(6) motion has long been disallowed by the Fourth Circuit. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

Accordingly, in one of many exemplary aspects, the present invention provides security systems and methods for protecting merchandise using programmable keys. *See* Exhibit C to First Amended Complaint, '762 at Col. 1, lines 21-26. As set forth in the First Amended Complaint: "The patents-in-suit describe inventions that advanced the art and relate to methods of protecting merchandise and programmable security systems that can include in certain embodiments, for example, one or more of a programmable security device configured for attachment to merchandise, a programmable key that can be used to arm or disarm the security device, and a programming station that can be used to provide a security code for use with one or more programmable keys and security devices. Various embodiments with additional or different features are also described." First Amended Complaint at ¶ 12.

For example, Figure 1 (repeated below) of each of the patents-in-suit is "an exemplary and preferred embodiment of a security system according to the present invention." *See* Exhibit C to First Amended Complaint at Col. 6, lines 4-5.



Among multiple other features, this exemplary embodiment includes e.g., a programmable key 5, a programming station 3, and an alarm module 7 that is attached to an item of merchandise 9 by a cable 11. *Id.* By way of example, for this exemplary embodiment, programmable station 3 can be

used to randomly generate a unique security code that can be provided to the programmable key 5 for use in a particular retail location. *Id.* at Col. 2, lines 18-27. These inventive features can prevent the key from being used at another retail location in an unauthorized manner to steal merchandise. *Id.* The alarm module 7 can be armed or disarmed by a key 5 having a security code that matches the security code of the alarm module 7. *Id.* at Abstract and Col. 10, lines 47-52.

Despite Defendant's assertions otherwise, the embodiments shown in the patents-in-suit are not limited to Figure 1. In fact, multiple other exemplary embodiments are presented including e.g., an exemplary embodiment that uses a product display security device 100 for an item 101 as shown in Figure 14 and another embodiment that uses a garment tag security device 105 as shown in Figure 15.



FIG—14                    FIG—15

Similarly, Defendant incorrectly asserts that claim 31 of the asserted '247 patent is "representative of all claims" of the patents-in-suit. Dft. Memo. at 3. Defendant makes this assertion in order to convince the Court that dismissal is proper without reviewing the patentability of all of

the claims in each of the patents-in-suit. Defendant's argument that all claims of the patents-in-suit are "represented" by claim 31 of the '247 patent is disingenuous at best. A simple comparison of claim 31 of the '247 patent with, for example, claim 35 of the asserted '800 patent (see the table below) reveals multiple differences:

| Claim 31 of the '247 Patent | Claim 35 of the '800 Patent |
| --- | --- |
| A method for protecting items of merchandise from theft, the method comprising: | A programmable security system for protecting items of merchandise from theft, the programmable security system comprising: |
| storing a security code in a programming station, the security code generated by the programming station and being unique thereto; | a plurality of security devices each comprising an alarm and a memory for storing a single security code, the single security code being the same for each of the plurality of security devices, each of the plurality of security devices configured to be attached to an item of merchandise, each of the plurality of security devices further configured to activate the alarm in response to the integrity of the security device being compromised; |
| providing the security code to a programmable key; | a plurality of programmable keys each configured to arm or disarm each of the plurality of security devices upon a matching of the single security code stored in the memory of the security device with a single security code stored by each of the plurality of programmable keys each of the plurality of programmable keys configured to be inactivated after a predetermined period of time; and |
| storing the security code at a security device attached to an item of merchandise, the security device comprising an alarm configured to be activated in response to the integrity of the security device being compromised; and | a programming station configured to reactivate each of the plurality of programmable keys after the predetermined period of time. |
| arming or disarming the security device upon a matching of the security code generated by the programming station with the security code stored by the security device. | |

As show above, claim 31 of the '247 patent is a method claim (e.g., relating to the performance of steps) while claim 35 of the '800 patent is an apparatus claim. Claim 35 of the '800

patent recites a plurality of programmable security devices and a plurality of programmable keys while claim 31 of the '247 patent does not. Claim 35 of the '800 patent recites a programming station configured to reactivate each of the plurality of programmable keys after a predetermined period of time whereas claim 31 does not. Claim 31 of the '247 patent recites storing a security code in a programming station whereas claim 35 of the '800 patent does not. This comparison is but one example of the many differences that exist between the numerous claims of the patents-in-suit. Multiple other differences are present in these and other claims in the patent-in-suit despite Defendant's attempt to summarily dismiss these differences in a footnote. *See* Dft. Memo. at 4, n. 2. Defendant is incorrect to argue that the Court can and should ignore all of the other claims.

## III.    LEGAL STANDARD

### a.    Standard for a Rule 12(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." Courts must apply the law of the regional circuits, rather than that of the Federal Circuit, to procedural issues arising in a patent case such as those presented by a Rule 12(b)(6) motion to dismiss. *See, e.g.*, *C & F Packing Co., Inc. v. IBP, Inc.,* 224 F.3d 1296, 1306 (Fed. Cir. 2000). The Fourth Circuit has indicated that when evaluating a Rule 12(b)(6) motion to dismiss, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678-682 (2009)).

In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448-49 (4th Cir. 2011)(*citing Sec'y of State for Defence v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007); *Phillips v. LCI Int'l*

*Inc.,* 190 F.3d 609, 618 (4th Cir.1999) (stating that "a court may consider [a document outside the complaint] in determining whether to dismiss the complaint" where the document "was integral to and explicitly relied on in the complaint" and there was no authenticity challenge)). A district court cannot go beyond these documents on a Rule 12(b)(6) motion and, if it does, it must convert the motion into one for summary judgment. *Id. (citing* Fed. R. Civ. P. 12(b), 12(d), 56). Such conversion is not appropriate where the parties have not had an opportunity for reasonable discovery. *Id.* (*citing Gay v. Wall,* 761 F.2d 175, 178 (4th Cir.1985). *See also* Fed. R. Civ. P. 12(d) (instructing that, when a Rule 12(b)(6) motion is treated as a summary judgment motion, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion").

Patents are presumed valid and the burden of establishing invalidity rests on the party asserting such invalidity. *See* 35 U.S.C. § 282. The Supreme Court has long recognized that "an infringer who assails the validity of a patent … bears a heavy burden of persuasion." *Radio Corp. of Am. v. Radio Eng'g Labs.*, 293 U.S. 1 (1934). Defendant must prove an invalidity defense by clear and convincing evidence. *See Microsoft Corp. v. I4I Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011). Within the last five months, the Middle District of North Carolina has applied the presumption of patent validity and required that the movant present clear and convincing evidence to substantiate a § 101 challenge. *Listingbook, LLC v. Mkt. Leader, Inc.*, No. 1:13-CV-583, 2015 WL 7176455, at *5 (M.D.N.C. Nov. 13, 2015) (holding on motion for summary judgment).[2]

---

[2] If the instant motion to dismiss were converted to a motion for summary judgment, summary judgment is only appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the litigation, and a dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial burden of "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v.*

Furthermore, the Fourth Circuit has held that an affirmative defense, such as patent ineligibility under 35 U.S.C. §101,[3] can be adjudicated through a Rule 12(b)(6) motion only in a narrow circumstance. More specifically, in the Fourth Circuit, a Rule 12(b)(6) motion "cannot reach the merits of an affirmative defense" other than in the "relatively rare" circumstances that all facts necessary to rule on that affirmative defense "clearly appear *on the face of the complaint.*" *Goodman,* 494 F.3d at 464 (emphasis in original). The Fourth Circuit has further explained that judicial notice should not "be used as an expedient for courts to consider 'matters beyond the pleadings' and thereby upset the procedural rights of litigants to present evidence on disputed matters." *Waugh Chapel South, LLC v. United Food and Comm'l Worker Union Local 27*, 728 F.3d 354, 360 (4th Cir. 2013) (*citing Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 271 (4th Cir. 2013)). Relying almost exclusively on exhibits outside the Complaint "inclines against deciding the case under Rule 12(b)(6)." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 511 (4th Cir. 2015). A court should also decline to take judicial notice of the movant's "own interpretation of the contents" of documents the movant contends are subject to judicial notice. *Id.* (*citing Ohio Valley Envtl. Coal. v. Aracoma Coal Co.,* 556 F.3d 177, 216 (4th Cir. 2009)).

---

*Catrett*, 477 U.S. 317, 325 (1986). Should the Court elect to convert Defendant's instant motion to dismiss into a motion for summary judgment, the motion must be denied as a matter of law because no discovery has occurred and Defendant has not asserted (much less proven) that there is no genuine dispute as to any material fact. To the contrary, the significant differences in the parties' positions concerning, for example, the scope and content of the prior art that Defendant improperly submits indicates that disputes as to material facts exist and summary judgment is inappropriate.

[3] *See Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.),* 687 F.3d 1266, 1280 (Fed. Cir. 2012) (recognizing invalidity under 35 U.S.C. § 101 as an affirmative defense).

This Court and others within the Western District of North Carolina have correctly followed Fourth Circuit precedent and denied motions to dismiss when the allegations on the face of the complaint were insufficient to determine the merits of an affirmative defense. *See, e.g. I-Minerals USA, Inc. v. Zielke*, No. 1:15-CV-00094-MOC, 2015 WL 5457840, at *4 (W.D.N.C. Sept. 16, 2015); *Garlock Sealing Techs., LLC v. Simon Greenstone Panatier Bartlett*, No. 3:14-CV-116, 2015 WL 5148732, at *2 (W.D.N.C. Sept. 2, 2015).

The Fourth Circuit's articulation of narrow grounds on which a Motion to Dismiss may be granted when based on an affirmative defense unquestionably requires that the instant Motion to Dismiss be denied. Plaintiff has made no showing that the merits of its § 101 affirmative defense can be determined by the allegations on the face of the complaint. This procedural deficiency is fatal to Defendant's motion.

**b.       Standard for Determining Patent Ineligibility**

Among other requirements for patentability found in the Patent Act, 35 U.S.C. § 101 defines the subject matter that is patent eligible:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

In *Alice Corp. Pty. Ltd. v. CLS Bank, Int'l*, 134 S. Ct. 2347 (2014), the Supreme Court affirmed that "laws of nature, natural phenomena, and abstract ideas are not patentable." *Id*. at 2354. The Court explained that the main concern is "one of pre-emption." More specifically, patent law should not "inhibit further discovery by improperly tying up the future use of these building blocks of human ingenuity." *Id*. (internal quotation mark omitted).

At the same time, the Supreme Court has cautioned against construing 35 U.S.C. § 101 such that it "swallows up all of patent law. . . . At some level 'all inventions . . . embody, use, reflect, rest

upon, or apply laws of nature, natural phenomena, or abstract ideas.' . . . Thus, an invention is not rendered ineligible for a patent simply because it involves an abstract concept. . . . Accordingly, in applying the § 101 exception, we must distinguish between patents that claim the 'building blocks of human ingenuity and those that integrate the building blocks into something more" thereby rendering them patent eligible under 35 U.S.C. § 101. *Id.* (*citing Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289, 1293-1294 (2012); *Diamond v. Diehr*, 101 S. Ct. 1048 (1981)).

Referring to the earlier case of *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012) , the Supreme Court explained in *Alice* that it has set forth a two-part framework for determining whether a claim is patent eligible.  First, the court must determine whether the patent claim is directed to a patent-ineligible concept (i.e. laws of nature, natural phenomena, or an abstract idea). *Alice*, 134 S. Ct. at 2355.  If so, then in a second step, the court "considers the elements of each claim both individually 'and as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application" *Id.* (*citing Mayo*, 132 S. Ct. 1298, 1297) (emphasis added).

While the Supreme Court refused to set forth an express definition of what qualifies as an abstract idea, generally the cases finding patent-ineligible subject matter have related e.g., to 1) business methods, 2) software patents, or 3) claims covering a longstanding practice or economic relationship with instructions to apply it on a generic computer. *See, e.g.*, *Alice*, 134 S. Ct. 2347 (claims directed to the abstract concept of intermediated settlement with instructions to apply it to a generic computer); *Bilski v. Kappos*, 130 S. Ct. 3218 (2010) (claims directed to abstract and longstanding financial concept of hedging against pricing fluctuations); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) (longstanding financial concept of a transaction performance

Case 3:15-cv-00610-MOC-DSC   Document 27   Filed 03/25/16   Page 11 of 26

guaranty); *Planet Bingo, LLC v. VKGS LLC*, 576 Fed.Appx. 1005 (Fed. Cir. 2014) (abstract concept of managing and playing the game of Bingo); *Digitech Image Techs. v. Electronics for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014) (abstract concept of organizing information through mathematical correlations).

## IV.    ARGUMENT

### A.    DEFENDANT'S MOTION SHOULD BE DENIED BECAUSE PLAINTIFF'S WELL-PLED FACTS SHOW THAT THE ASSERTED PATENTS ARE NOT DIRECTED TO AN ABSTRACT IDEA.

On a Rule 12(b)(6) motion, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).  Plaintiff alleges the following at paragraph 12 of the First Amended Complaint:

> The patents-in-suit describe inventions that advanced the art and relate to methods of protecting merchandise and programmable security systems that can include in certain embodiments, for example, one or more of a programmable security device configured for attachment to merchandise, a programmable key that can be used to arm or disarm the security device, and a programming station that can be used to provide a security code for use with one or more programmable keys and security devices.  Various embodiments with additional or different features are also described.

As already stated, the § 101 analysis for patent-eligible subject matter requires Defendant to address the limitations of each of the 113 claims of the patents-in-suit, which Defendant has failed to do.  Instead, Defendant refers to "Field of the Invention" and other portions of the specification and drawings of the patents-in-suit to improperly summarize all 113 claims with the phrase of "directed to the abstract idea of protecting merchandise from theft with a lock and key." Dft. Memo. at 7.  Defendant's entire motion is based on this faulty premise and improper approach.

Moreover, in the procedural posture of a Rule 12(b)(6) motion, the well-pled allegations of the First Amended Complaint – including paragraph 12 – must be accepted as true.  As such,

paragraph 12 shows that the patents-in-suit are clearly directed to more than protecting merchandise with a lock and key. More particularly, paragraph 12 asserts that embodiments of the patents-in-suit include concrete, physical, and tangible components such as e.g., i) a programmable security device configured for attachment to merchandise, ii) a programmable key that can be used to arm or disarm the security device, and iii) a programming station that can be used to provide a security code for use with one or more programmable keys and security devices. There is nothing even remotely abstract about a security system that includes these multiple, tangible devices.

However, although required by its Rule 12(b)(6) motion, Defendant does not even mention paragraph 12 or other specific allegations of the First Amended Complaint concerning the patents-in-suit. As such, Defendant wholly fails to undertake the required showing that the patents-in-suit are directed to patent-ineligible subject matter even if the allegations of the First Amended Complaint, including paragraph 12, are accepted as true. Instead, Defendant has tried to conveniently circumvent this requirement by improperly summarizing 113 claims of the patents-in-suit with a summary phrase – a phrase selected unilaterally by Defendant without reference to the actual limitations in the claims of the patents-in-suit – for the purported abstract concept. On this basis alone, Defendant's Rule 12(b)(6) motion can and should be denied in its entirety.

**B.    DEFENDANT'S MOTION SHOULD BE DENIED BECAUSE ITS PROFERRED ABSTRACT IDEA INACCURATELY REPRESENTS THE CLAIMS OF THE PATENTS-IN-SUIT.**

For its motion, Defendant has the burden of identifying and articulating an abstract idea within the meaning of *Alice*. Proffering "protecting merchandise from theft with a lock and key" as the abstract idea of all 113 claims of the patents-in-suit, Defendant's summary phrase fails to properly represent the claims of the patents-in-suit and even mischaracterizes the claims by

improperly omitting non-abstract items. The immense gap between Defendant's incorrect summary phrase and the claims of the patents-in-suit cannot be overstated.

Specifically, the word "lock" does not appear even once in 113 claims – much less the phrase "lock and key." Yet, Defendant does not explain how "lock" or any other portions of its summary phrase accurately represent an abstract idea of all claims of the patents-in-suit. This is particularly problematic when paragraph 12 of the First Amended Complaint must be accepted as true for the purpose of its Rule 12(b)(6) motion and there is no mention of a "lock" in paragraph 12.

In addition, Defendant asserts its summary phrase "protecting merchandise with a lock and key" as an abstract idea despite acknowledging multiple times in its memorandum that the patents-in-suit include much more than what is stated in Defendant's phrase. For example, at pages 2 and 3 of its memorandum, Defendant asserts that Figure 1 of each of the patents-in-suit illustrates "the present invention." Then at page 9 of its memorandum, Defendant again represents Figure 1 as being what Plaintiff has "patented." However, a review of Figure 1 (repeated below) reveals at least twenty-four concrete, physical, and tangible items (referenced with numbers) that relate to the claimed security system including e.g., an alarm module 7, an item of merchandise 9, a sense loop 13, a light pipe 67, a receiving port 29, a light pipe 89, a programmable key 5, a programming station 3, and multiple other items.



FIG-1

14

Without explanation, Defendant has omitted many of these items from its summary phrase of "protecting merchandise with a lock and key."  And though no lock appears in Figure 1, and though not a single line of text in the patents-in-suit references anything in Figure 1 as a lock, Defendant includes "lock" in its summary phrase for all 113 claims of the patents-in-suit with no explanation of how such is accurate and proper.

Notably, Defendant does include at least one claim limitation – i.e. "key" – in its summary phrase, but even this is presented in isolation from other contextual language of the patents-in-suit (the claims repeatedly reference, e.g., a "programmable key").  Isolating portions of the claims is improper for a § 101 analysis.  The Supreme Court has long held that, for determining patent eligibility, the "the claims must be considered as a whole." <u>Diamond v. Diehr</u>, 450 U.S. 175, 188-89 (1981).

Notwithstanding the above, perhaps the most conspicuous and totally unexplained defect in Defendant's proffered abstract concept is the absence of the word "alarm."  While not appearing in Defendant's summary phrase, the word "alarm" is <u>present in every independent claim of all three of the patents-in-suit</u>.  "Alarm" even appears in claim 31, which Defendant states is "representative of all claims" of the asserted patents. Dft. Memo. at 3.  Like many other limitations of the claims that Defendant omits, an alarm is a concrete, physical, and tangible item.  Defendant presumably omits "alarm" for this very reason.

In attempting to support its articulation of an abstract idea, Defendant also improperly relies on matters outside of the First Amended Complaint.  At page 9 of its memorandum, Defendant not only references Exhibits C and D (neither of which are part of the First Amended Complaint), but Defendant also offers up its own self-serving interpretation of these documents to support its

abstract concept arguments. As already stated, this is improper on a Rule 12(b)(6) motion in the Fourth Circuit. *See supra section III, a.*

For its proposed abstract phrase, Defendant asserts that the California district court cases of *Enfish* and *Open Text* allow it to ascribe a "high level of generality" to all 113 claims of the patents-in-suit while identifying "the purpose of the claims." Dft. Mem. at 7. However, no generalized "purpose of the claims" step is espoused in *Alice*. To the contrary, in *Alice* the Supreme Court unequivocally required consideration of all "claims at issue" as part of the § 101 patent eligibility analysis. 134 S. Ct. at 2355. Furthermore, the Supreme Court has long held that the claims to a combination of elements "cover the totality of the elements," not just any one element, and has rejected summary assertions of the "gist" or "heart" of the invention as a substitute for analyzing all elements of the claims. *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 81 S. Ct. 599, 604 (1961). In ascribing a "high level of generality" to claims, Plaintiff respectfully submits that *Enfish* and *Open Text* incorrectly side step these express requirements of Supreme Court precedent.

### C. DEFENDANT'S MOTION SHOULD BE DENIED BECAUSE EVEN PLAINTIFF'S SUMMARY ABSTRACT CONCEPT ESTABLISHES THAT THE PATENTS-IN-SUIT CLAIM PATENTABLE SUBJECT MATTER.

Even if the Court accepted Defendant's summary phrase "protecting merchandise from theft with a lock and key" as correctly representing an all 113 claims, the Court should deny the motion and find that the patents-in-suit are not directed to patent-ineligible subject matter. Simply put, Defendant's proffered phrase includes both <u>a lock</u> and <u>a key</u>, and there is nothing abstract about either a lock or a key. Defendant's assertions here are, at a minimum, unreasonable. In fact, if protecting merchandise with a lock and a key are abstract, then it is difficult to imagine anything that is not, and the *Alice* analysis will "swallow all of patent law" just as the Supreme Court warned. 134 S. Ct. at 2354. Indeed, under Defendant's rationale, there could be no patentable improvements to a

lock and key since the alleged introduction of pin tumbler locks by the Ancient Egyptians over 4000 years ago. Dft. Memo. at 8.

Protecting merchandise with a lock and key is not even remotely similar to the previous patents invalidated under § 101. For example, these patents were e.g., directed to business methods, software patents, or longstanding practices or economic relationships with instructions to apply it on a computer. While the Supreme Court has not provided a bright line test for the § 101 analysis, none is needed here to determine that a lock and key are not abstract ideas.

Even if somehow abstract, the lack of preemption by the claims of the patents-in-suit demonstrates their patent-eligibility. In *Alice*, the Supreme Court emphasized that the driving concern for ensuring patents are directed to eligible subject matter is preemption – i.e. the patent should not inhibit further discovery by "improperly tying up the future use of these building blocks of human ingenuity." *Alice*, 134 S. Ct. at 2354. The Federal Circuit has emphasized that the extent of any preemption is an important factor in the § 101 analysis of patent-eligible subject matter. For example, in *DDR Holdings, LLC v. Hotels.com*, L.P. 773 F.3d 1245 1259 (Fed. Cir. 2015), the court found claims that were directed to an abstract concept <u>were still patent eligible</u> – i.e. valid under § 101 – because the claims did not <u>preempt</u> every application of the abstract concept.

In the present case, protecting merchandise from theft with a lock and key (or any other means for that matter) is hardly what could be described as a "building block of human ingenuity" such as the laws of thermodynamics or Keynesian economic theories. In addition, even if the summary phrase is accurate, not every application of the abstract concept is preempted by Plaintiff's claims. For example, the conventional "lock and key" illustrated on page 15 of Defendant's memorandum (and improperly submitted by Defendant as supporting evidence to its Rule 12(b)(6) motion) is not preempted from future use by any claim of the patents-in-suit. To the contrary, even

with 113 claims in the patents-in-suit, literally hundreds of different types of security systems not falling within the scope of the claims and using this same conventional "lock and key" remain available for use to protect merchandise from theft. For example, retail merchandise can still be protected by a myriad of alarm systems that – along with this lock and key – use, for example, motion detection, sound detection, beams, electronic article surveillance, and other means of detection. The absence of preemption demonstrates that the patents-in-suit claim patent-eligible subject matter even if Defendant's summary phrase is accepted.

### D. DEFENDANT'S MOTION SHOULD BE DENIED BECAUSE CLAIM CONSTRUCTION IS REQUIRED BEFORE THE § 101 ANALYSIS.

The Federal Circuit has indicated that "it will ordinarily be desirable – and often necessary – to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp Services, LLC v. Sun Like Assur. Co.*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012). Indeed, courts have denied Rule 12 motions where claim limitations were disputed and no claim construction had yet occurred. *See, e.g.*, *Data Distribution Technologies, LLC v. Brer Affiliates, Inc.*, 2014 WL 4162765 (D.N.J. 2014) (denying Rule 12(b)(6) motion because claim terms were in dispute and noting that other courts have decided § 101 eligibility where parties were in agreement on claim construction for purposes of the motion); *Sandborn v. Avid Technology, Inc*., 2013 WL 4784265 *5-6 (D. Mass. 2013) (denying a Rule 12(c) Motion because claim construction had not occurred and noting that the defendant had "not clearly established, at least at this stage, that the only plausible construction of the patented claims results in an unpatentable mental process, nor has it clearly established that no construction of the term could provide sufficient limitations on the abstract concept. Taken in the light most favorable to the plaintiff, it is not clear that the claims necessarily constitute mental processes or abstract ideas."). Defendant's motion should be denied

because – despite asserting no claim construction is needed – Defendant repeatedly proposes claim constructions that Plaintiff disputes, as demonstrated in the following examples.

First, Defendant improperly construes one or more claims of the patents-in-suit to include a generic computer. Defendant repeatedly asserts that Plaintiff claims are "mere recitation of a generic computer" (Dft. Memo. at 13), "are simply computerizing security systems" (Dft. Memo. at 13), or "computerize" a process (Dft. Memo. at 16). *See also* Dft. Memo. at 12 "computerization of the "key," "station," and "security device"). Yet, the words "computer," "computerize," "computerizing," and "computerization" do not appear even once among the 113 claims of the three patents-in-suit (nor in their entire specifications for that matter), and Defendant provides no explanation for this fictional construction.

Second, at page 3 of its memorandum, Defendant incorrectly asserts that: i) "key" is the same as "programmable key" - thereby completely eviscerating "programmable" from multiple claims; ii) "lock" is the same as "security device"; iii) "lock is the same as "arm"; iv) "unlock" is the same as "disarm." Moreover, despite no mention of "keying" in any of the claims, the Defendant also alleges that "keying" the programmable key with a security code is the "digital equivalent to keying the blade portion of a mechanical key with a key-cutting machine." Dft. Memo. at 4. Defendant appears to allege that "keying" is the same as "programming." Dft. Memo. at 9. Thus, Defendant construes these claim terms by substituting words of its own choosing to support its incorrect § 101 analysis.

Third, at page 9 of its memorandum, Defendant improperly introduces matters not found on the face of the First Amended Complaint (*e.g.,* Exhibit C, U.S. Pat. Nos. 3,444,547; Exhibit D, U.S. Pat. No. 969,702) to support its claim construction that "programming station" (found in multiple

claims) is the same as a metal key-cutting machine.[4]  Aside from the fact that the very figures Defendant compares on page 9 are not remotely identical, Defendant is clearly construing "programming station" by equating it with a "key cutting machine."  This incorrect claim construction occurs a mere two pages after asserting that claim construction is not needed. Defendant further equates the "programming station" to a "computer." Dft. Memo. at 13, 16.  Thus, Defendant proffers different claim constructions for the "programming station," which further demonstrates their disingenuous argument that claim construction is not required.

Fourth, at page 15 of its memorandum, Defendant incorrectly asserts that a "programmable key" (found in several claims of the asserted patents) is the same as a "mechanical key."  Defendant again improperly introduces matters not found on the face of the First Amended Complaint (Exhibit E, The Complete Book of Locksmithing) to support this implied claim construction.  At page 16 of its memorandum, Defendant incorrectly asserts that the shape of the mechanical key is a "code" – which is still another limitation found in multiple claims of the patents-in-suit.  With no effort at construction, Defendant also asserts that the "code" is "unique" – which is still another claim limitation apparently in dispute based on Defendant's incorrect construction.[5]

Finally, for the avoidance of doubt, recent communications between the parties further confirm that there is a dispute over the meaning of the claim limitations of the patents-in-suit. Between the filing of the original Complaint and the First Amended Complaint in this matter, the parties exchanged letters over the scope of one of the asserted patents.  Predictably, Defendant asserts that the claims cannot cover its products while Plaintiff asserts that the products infringe.

---

[4] Plaintiff objects to all materials submitted by Defendant that are not found on the face of the First Amended Complaint including Exhibits B, C, D, and E. *See Waugh Chapel South, LLC v. United Food and Comm'l Worker Union Local 27*, 728 F.3d 354, 360 (4th Cir. 2013).
[5] Defendant's analysis of the dependent claims also shows that the construction of the terms "unique" and "random" is apparently disputed. Dft. Memo. at 18.

The dispute clearly includes the meaning of the claims, which the Court will eventually address under the procedures for claim construction set forth in the Local Patent Rules.

Accordingly, Plaintiff respectfully submits that Defendant's motion should be denied because the meaning of multiple limitations found in the claims of the patent-in-suit are disputed.

### E. DEFENDANT'S MOTION SHOULD BE DENIED BECAUSE EVEN IF THE CLAIMS ARE DIRECTED TO AN ABSTRACT IDEA, THE CLAIMS CONTAIN ADDITIONAL ELEMENTS THAT TRANSFORM THE CLAIMS INTO PATENT-ELIGIBLE SUBJECT MATTER.

Under the Supreme Court's decision in *Alice*, if a court finds the claims are directed to an abstract concept, then the court "considers the elements of <u>each claim</u> both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." 134 S. Ct. at 2355 (*citing Mayo*, 132 S. Ct. 1298, 1297). This second step of the *Alice* analysis is a "search for an inventive concept —*i.e.,* an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id*. (internal citation omitted). For the second part of the *Alice* test, Defendant must show that the additional limitations other than the abstract idea are "well known" in the art or that such limitations simply add the words "apply it" to the abstract idea. *Id*. at 2357. While Plaintiff asserts that Defendant has failed to show the patents-in-suit are directed to an abstract concept, Plaintiff now explains why Defendant's motion should still be denied under this second step of the *Alice* analysis.

First, the motion should be denied because Defendant improperly relies on evidence outside of the First Amended Complaint and its attachments for *Alice*'s second step. Specifically, Defendant's memorandum references excerpts from patents as books attached as Exhibits B, C, D, and E – none of which are referenced in, or attached to, the First Amended Complaint. As previously set forth, on a Rule 12(b)(6) motion, a court cannot consider such evidence. *E.I. du Pont*

*de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448-49 (4th Cir. 2011). In addition, Defendant has made no showing that this is one of those "relatively rare" circumstances where all facts necessary to rule on the affirmative defense of § 101 "clearly appear *on the face of the complaint.*" *Goodman,* 494 F.3d at 464 (emphasis in original). This procedural flaw alone is fatal to Defendant's motion.

Second, Defendant's nevertheless fails to consider "each claim" of the 113 claims of the patents-in-suit as required by *Alice.* After summarily asserting that all 113 claims are directed an abstract idea, Defendant then randomly selects a subset of claim limitations, takes these limitations out of the context of claims and without claim construction, and then asserts such claim limitations are well known. *See* Dft. Memo. at pp. 11-19. This approach thereby fails to consider the elements of each claim "both individually and as an ordered combination" to determine whether there is patent-eligible application.

Third, Defendant incorrectly asserts that the patents-in-suit do not contain additional transforming elements and, instead, are merely directed to a generic computer. Defendant is attempting here to add weight to its § 101 challenge by invoking the concept that "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice,* 134 S. Ct. at 2358. However, Defendant's argument should be rejected because, as previously discussed, the words "computer," "computerize," and "computerizing" do not appear even once among the 113 claims of the three patents-in-suit (nor the entire specification). By contrast, in *Alice*, the claims at issue "simply instruct[ed] the practitioner to implement the abstract idea of intermediated settlement on a generic computer." 134 S. Ct. at 2359. Other generic computer implementation cases also show the complete inapplicability of the "generic computer" concept here. *See buySAFE, Inc. v. Google, Inc.,* 765 F.3d 1350, 1355 (Fed. Cir. 2014)(claims

recited no more than using a computer to send and receive information over a network to implement the abstract idea of creating a "transaction performance guaranty."); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.,* 728 F.3d 1336, 1344–45 (Fed. Cir. 2013) (claims merely recited "generalized software components arranged to implement an abstract concept [of generating insurance-policy-related tasks based on rules to be completed upon the occurrence of an event] on a computer."); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.),* 687 F.3d 1266, 1278 (Fed. Cir. 2012)( claims recited no more than the use of a computer "employed only for its most basic function, the performance of repetitive calculations," to implement the abstract idea of managing a stable-value protected life insurance policy).  Unlike these cases, Defendant fails to show (and cannot show) that the claims of the patents-in-suit broadly call for the performance of an abstract idea on the internet or on a conventional computer.

Fourth, the asserted claims clearly contain additional elements – beyond a "lock and key" for protecting merchandise – that transform the claims into patentable eligible application.  Defendant asserts that claim 31 of the asserted '247 patent is "representative of all claims" of the patents-in-suit. Dft. Memo. at 3.  While not conceding this point, Plaintiff will use claim 31 to demonstrate that the patents-in-suit contain the required additional elements.

Namely, claim 31 requires storing a security code in a programming station, the security code generated by the programming station and unique to the programming station.  Defendant fails to show that a programming station that generates and stores a unique security code was well known in the art.  Using evidence improperly submitted on a Rule 12(b)(6) motion, Defendant asserts that a "key-cutting station" and "a mechanical key" are conventional. Dft. Memo. at 9 and 15.  However, aside from the need for claim construction, Defendant does not even attempt to address how the key-

cutting station can generate and store a unique security code.  As such, Defendant fails to show how this limitation of claim 31 did not transform the claim into patent-eligible application.

Next, claim 31 requires providing the security code to a programmable key.  Defendant also fails to show how this limitation was "well known" in the art.  Using evidence improperly submitted on a Rule 12(b)(6) motion, Defendant asserts that a mechanical lock can have a code based on the length of certain pins. Dft. Memo. at 15.  However, aside from the need for claim construction, Defendant fails to show how the mechanical lock could ever provide this code to the key.  As such, Defendant fails to show how this limitation of claim 31 did not transform the claim into patent-eligible application.

Claim 31 also requires storing the security code at a security device attached to an item of merchandise, the security device comprising an alarm configured to be activated in response to the integrity of the security device being compromised.  Defendant makes no effort whatsoever to show how this particular limitation of the claim is conventional.  While Defendant argues about some of the words of the claim in isolation, Defendant never attempts to address this limitation as a whole.  For example, Defendant never attempts to show how the improperly submitted "key-cutting machine" generates a code that is then stored in a security device.

Finally, claim 31 requires arming or disarming the security device upon a matching of the security code generated by the programming station with the security code stored by the security device.  Once again, Defendant makes no effort whatsoever to show how this particular limitation of the claim is conventional.  While Defendant argues about some of the words of the claim in isolation, Defendant never attempts to address this limitation as a whole.  For example, Defendant never attempts to show how the improperly submitted "key-cutting machine" generates a unique

security code that when matched with a security code stored in a security device, arms or disarms the security device.

Therefore, Defendant's motion should be denied because Defendant fails to carry its burden of showing that the claims do not include additional limitations transforming the claims into patent-eligible application.

## V.    CONCLUSION

Plaintiff respectfully submits that the Court should find that the patents-in-suit are directed to patent-eligible subject matter under § 101, and deny Defendant's Rule 12(b)(6) motion to dismiss the First Amended Complaint.

This the 25th day of March, 2016.

Respectfully submitted,

s/ Tim F. Williams
Tim F. Williams (Fed. Id. 6276)
Steven R. LeBlanc (Fed. Id. 7000)
DORITY & MANNING, P.A.
P.O. Box 1449
Greenville, S.C. 29602-1449
Tel: 864-271-1592
Fax: 864-233-7342
timw@dority-manning.com

J. Mark Wilson
N.C. Bar Number 25763
MOORE & VAN ALLEN, PLLC
100 North Tryon Street
Suite 4700
Charlotte, NC  28202-4003
Telephone: (704) 331-1000
Facsimile: (704) 331-1159
Email: markwilson@mvalaw.com

**Attorneys for the Plaintiff**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I electronically filed PLAINTIFF'S MEMORANDUM OF LAW IN

OPPOSITION TO DEFENDANT MOBILE TECH, INC.'S MOTION TO DISMISS PLAINTIFF'S

FIRST AMENDED COMPLAINT with the Clerk of Court for the United States District Court,

Western District of North Carolina, using the electronic case filing system of the Court.  The

electronic case filing system will send a "Notice of Electronic Filing" to all attorneys of record who

are registered on the CM/ECF system and have consented to accept service by electronic means.

including

Richard S. Glaser (N.C. Bar No. 13998)
Alice C. Richey (N.C. Bar No. 13677)
Parker Poe Adams & Bernstein LLP
Three Wells Fargo Center
401 South Tryon Street, Suite 3000
Charlotte, NC 28202
P: (704) 335-9531
F: (704) 335-4476

Matthew A. Braunel (*Pro Hac Vice*)
Steven E. Garlock (*Pro Hac Vice*)
Alan H. Norman (*Pro Hac Vice*)
David B. Jinkins (*Pro Hac Vice*)
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, MO 63101
P: (314) 552-6000
F: (314) 552-7000

Dated: March 25, 2016                                          s/ Tim F. Williams